IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GUY POLLICE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 02: 04cv1424 |
| ) | |
| CARNEGIE MUSEUMS OF PITTSBURGH, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

September 11, 2006

Presently before the Court is the MOTION FOR SUMMARY JUDGMENT, with brief in support, filed by Defendant Carnegie Museums of Pittsburgh *(Document Nos. 20 and 21)*, the BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT filed by Plaintiff, Guy Pollice (*Document No. 38*), the REPLY BRIEF filed by Defendant (*Document No. 57)* and the SUR-REPLY filed by Plaintiff (*Document No. 61*).

The issues have been fully briefed and the matter is ripe for disposition. After a thorough review of the motion, the brief in support, brief in opposition, reply brief in support, sur-reply brief in opposition, the record, and applicable case law, the Motion will be granted in part and denied in part.

**PROCEDURAL BACKGROUND**

Plaintiff Guy Pollice ("Plaintiff") brought this lawsuit on August 30, 2004, by the filing of a Complaint against Defendant Carnegie Museums of Pittsburgh ("Defendant" or "The Carnegie") in the Court of Common Pleas of Allegheny County in which he alleges that his former employer, The Carnegie, (i) wrongfully terminated his employment and engaged in other retaliatory acts in violation of Title 42, United States Code, Section 1981 ("Section 1981);

and (ii) unlawfully discriminated against him based on his "disability" in violation of the Americans with Disabilities Act ("ADA").  Additionally, Plaintiff alleges violations of Pennsylvania state law which include discrimination under the Pennsylvania Human Relations Act ("PHRA"), breach of contract, and negligent and fraudulent misrepresentation.

On September 16, 2004, Defendant timely removed the matter to this Court.

Defendant has filed the instant motion for summary judgment in which it contends that Plaintiff is unable to establish a *prima facie* case of retaliation and/or discrimination under either Section 1981 or the ADA.  In the alternative, Defendant contends that assuming *arguendo* that Plaintiff could state a *prima facie* case under Section 1981, summary judgment should still be granted in its favor because there is no evidence that Defendant's articulated legitimate, non-retaliatory reason for Plaintiff's discharge (i.e., inadequate performance) was false and/or that Plaintiff's "protected activity" was the real reason for his termination.

Furthermore, Defendant contends that it is entitled to summary judgment on Plaintiff's state law claims of breach of contract, and negligent and fraudulent misrepresentation.

## BACKGROUND

As the law requires, all disputed facts and inferences are resolved most favorable to the Plaintiff.  Furthermore, the Court merely provides an abridged summary of facts for the purpose of this Opinion.

Plaintiff was employed by The Carnegie as Assistant Director of General Services from June 30, 2001, until his termination on September 17, 2002.  At the time that Plaintiff was

hired by The Carnegie, he had been a long-term employee of the Housing Authority of the City of Pittsburgh ("HACP"), having worked there approximately eighteen and a half (18-½) years as of April, 2001.  At HACP, Plaintiff held the position of Director of Maintenance, which was a "senior level management" position in which Plaintiff had overall responsibility for maintenance throughout the HACP.

Prior to his employment with The Carnegie, Plaintiff and Terrence O'Horo ("O'Horo"), Vice President and Treasurer of The Carnegie, met for lunch on several occasions to discuss Plaintiff's potential employment in the General Services Department of The Carnegie.  O'Horo indicated that The Carnegie was considering Plaintiff for the position of Director of General Services.

During their second meeting, O'Horo informed Plaintiff that he had hired an in-house candidate, Larry Armstrong ("Armstrong"), as the Director of General Services and asked Plaintiff if he would be interested in the position of Assistant Director.  Plaintiff "thought about it for a minute" and then asked why he had not been considered for the Director's position. O'Horo informed Plaintiff that the Director would handle special projects and that Plaintiff "would handle everything else," which included  supervision of the day-to-day operations of the building trades, the security department, and the custodial department.  In response, Plaintiff informed O'Horo that he would consider such a position only if he was assured that if he was hired he would be given broad authorities and prerogatives to improve the Department of General Services, similar to the authority and discretion that he had in his current position of Director of Maintenance with the HACP.  Plaintiff also informed O'Horo that he would not leave his secure position at the HACP, unless the position with The Carnegie

was equally secure and "long term." O'Horo assured Plaintiff that the Assistant Director's position was "long term" and that if Plaintiff accepted the position, he could be assured that it was "secure."

Plaintiff had a third meeting with O'Horo, which Armstrong also attended. At this meeting, O'Horo offered the position of Assistant Director to Plaintiff, which Plaintiff eventually accepted.

Plaintiff's first day of work at The Carnegie was July 5, 2001. In July 2001, a meeting with Armstrong, Plaintiff, and the supervisors of the building trades (a group which Plaintiff supervised) was scheduled. However, on the day of the scheduled meeting, Armstrong began the meeting earlier than scheduled and without Plaintiff being present.

Two weeks into his employment with The Carnegie, Plaintiff had a luncheon meeting with Eileen Meddis ("Meddis"), Director of Corporate Resources. At that meeting, Plaintiff told Meddis that he did not think that Armstrong was a "good communicator."

On July 25, 2001, Plaintiff prepared and supplied to Armstrong a "custodial schedule recommendation," which included his "staff recommendations for three custodial shifts." According to Plaintiff, the move to a night cleaning shift was to occur within six months of his date of hire.

On September 24, 2001, Armstrong and Plaintiff met to discuss the coordination of tasks with one another. Armstrong did not criticize Plaintiff's work performance during this meeting; rather, the meeting was a general discussion about work that was being performed within the General Services Department.

On September 26, 2001, Plaintiff had an appointment with Saul Silver, M.D., his treating physician. Plaintiff was diagnosed with aortic stenosis, for which Dr. Silver recommended that Plaintiff undergo heart surgery. After the medical appointment, Plaintiff informed Armstrong that he would need to have heart surgery sometime in November, 2001.

On November 9, 2001, prior to commencing his medical leave, Plaintiff met with Armstrong and told him that African-American employees within the Custodial Department were being discriminated against on the basis of their race and/or that such employees had made credible complaints to him about such discrimination. (*Complaint, at ¶ 8.*) Upon hearing this, Armstrong became visibly angry and was red in the face.

Following surgery, Plaintiff was off work for three months, from late-November 2001 through February 4, 2002. At the time of his surgery, Plaintiff had exhausted his paid time off, including both vacation and sick leave, and was ineligible for FMLA leave. However, Armstrong and O'Horo agreed to advance vacation and holiday days to Plaintiff for each month that he was off so that he would be considered to "have worked" a day in each month, thereby remaining eligible for employer-paid health care benefits.

Plaintiff returned to work on February 4, 2002, without any restrictions. Upon his return, Plaintiff contends that "without any prior warning, notice or written documentation, he was stripped of his duties as the Assistant Director of General Services and reduced to serving as a supervisor in the Custodial Department." In that position, Plaintiff did not have any authority, discretion, or prerogatives such as had been promised him by O'Horo.

In early February 2002, Armstrong met with Plaintiff and provided him with a list of assignments he expected Plaintiff to complete. During this meeting, Armstrong also expressed

5

concern that a "number of people" had questioned Plaintiff's trustworthiness.  When Plaintiff asked Armstrong to identify any of the persons who had questioned his "trustworthiness," Armstrong claimed he could not recall the names of these people.

By memoranda dated February 14 and 19, 2002, Armstrong reported that a lack of cleanliness had been noted on the second and third floors of the Museum of National History. Plaintiff contends, however, that Armstrong falsely documented these reports.

During a meeting held at the end of February, 2002, Plaintiff informed O'Horo of the complaints he had received about Armstrong from the African American employees in the Custodial Department. O'Horo allegedly responded angrily to the information and stated to Plaintiff "if they want to go down that path, let them."  O'Horo then abruptly ended the meeting.  *(Pl's Depo. at 75.)*

On May 20, 2002, Armstrong issued a Performance Evaluation to Plaintiff which outlined Plaintiff's alleged lack of performance since the time of his hire at The Carnegie. Plaintiff disagreed with the evaluation and claimed that Armstrong falsely documented tasks as not being complete.

In July 31, 2002, Armstrong prepared a second Performance Evaluation in which he again noted Plaintiff's alleged lack of performance.

In August 2002, Armstrong went to O'Horo and recommended that Plaintiff's employment be terminated.  O'Horo approved the recommendation and The Carnegie terminated Plaintiff's employment on September 17, 2002.

Plaintiff contends that after he complained about racial discrimination in November 2001, his treatment by Armstrong and O'Horo deteriorated and he was subjected to unjustified

excessive scrutiny. Additionally, Plaintiff contends that Armstrong falsely documented alleged deficiencies in Plaintiff's work performance. According to Plaintiff, there is ample record evidence that during his employment the performance of the custodial department improved and was a subject of repeated compliments on such improvements.

### STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id*. (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

**DISCUSSION**

A.  *Claims of Unlawful Termination Under Section 1981*

As stated above, Plaintiff claims that he was terminated from his employment in retaliation because he engaged in protected activity, i.e., he reported alleged racial discrimination which was occurring in the Custodial Department.  Defendant responds that it is entitled to summary judgment because (i) Plaintiff cannot make out a *prima facie* case of retaliation and (ii) assuming that Plaintiff could make out a *prima facie* case of retaliation, Defendant had a legitimate nonretaliatory business reason for terminating his employment.  The task of the Court is not to second-guess employment decisions, but is instead to determine whether the employment decisions were motivated by an illegal discriminatory purpose.  *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 525-27 (3d Cir. 1992), *cert. denied,* 510 U.S. 826 (1993).

To establish a *prima facie* case of retaliation under either Title VII of the Civil Rights Act of 1964 ("Title VII") or Section 1981,[1] a plaintiff must tender evidence that: '(1) [he] engaged in activity protected . . .; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between [his] participation in the protected activity and the adverse employment action'."  *Moore v. City of Philadelphia*, No. 03-1473, slip op. at 18 , -- F.3d --, 2006 WL 2492256 (3d Cir. August 30, 2006) (*quoting Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)).

---

[1]  Title VII and Section 1981 discrimination and retaliation claims are analyzed under the same substantive standard. *See Olabode v. Hecht Inc.*, 1997 WL 805187 (E.D. Pa. Dec.30, 1997).

Should the Plaintiff make such an evidentiary showing, a presumption of discrimination arises and the burden shifts to the Defendant to articulate some legitimate, non-retaliatory reason for its decision. *Moore,* slip op. at 20.

The employer need only produce sufficient evidence to enable a factfinder to conclude that the action taken was motivated by a non-retaliatory purpose. If the defendant is able to clear this relatively low hurdle, the presumption is overcome and the burden is again on the plaintiff, who "must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Moore,* slip op. at 20 (*quoting Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500-01 (3d Cir. 1997)). "To survive a motion for summary judgment in the employer's favor, a plaintiff must produce some evidence from which a jury could reasonably reach these conclusions." *Moore,* slip op. at 20 (*citing Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

The Court finds and rules that there is sufficient record evidence from which a factfinder could reasonably find that Plaintiff engaged in protected activity when he reported complaints of racial discrimination to Armstrong in November 2001 and O'Horo in February 2002. "'Opposition' to discrimination can take the form of 'informal protests of discriminatory employment practices, including making complaints to management'." *Moore,* slip op. at 22 (*quoting Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)).

Accordingly, for the purpose of this decision, the Court will assume that Plaintiff has met his *prima facie* case. Therefore, the burden shifts to Defendant to articulate some

legitimate, non-retaliatory reason for its decision to terminate Plaintiff's employment. Defendant argues that Plaintiff was terminated as a result of his poor performance. The Court concludes, however, that drawing all reasonable inferences in favor of Plaintiff, a reasonable factfinder could conclude that Defendant's cited reasons for Plaintiff's termination were "animated by a retaliatory motive rather than some other reason." *Moore,* slip op. at 25.

Defendant cites numerous reasons why Plaintiff's performance was consistently deficient, both before and after any alleged protected activity. However, there are "weaknesses, implausibilities, inconsistences or contradictions" with Defendant's proffered reasons. *See Fuentes,* 32 F.3d at 765. As an initial matter, Plaintiff contends that the General Services Department was improving under his supervision and it was fully understood by O'Horo and Armstrong that it would take Plaintiff a minimum of six months before he would be able to make "significant" changes in the General Services Department. The record is devoid of any written warning or other documentation of substandard performance issued prior to Plaintiff's complaint of racial discrimination.

Plaintiff also points out that O'Horo, during his deposition, was not able to identify a single goal that Plaintiff had not achieved during his employment. Furthermore, Plaintiff contends that after he complained of racial discrimination, Armstrong falsely documented alleged deficiencies in Plaintiff's work performance. (*See* Plaintiff's Reply to Defendant's Statement of Undisputed Facts, Paragraphs 47, 49, 51, 52, 53, 54, 58, 59, 60, 61, and 62.)

The Court finds and rules that there are genuine factual issues that present sufficient disagreement to require submission of this case to a jury. In summation, the Court holds that while the Plaintiff may not prevail at trial, the Plaintiff's factual theories are not wholly

implausible and that a reasonable finder of fact may resolve the issues raised by Defendant's motion in favor of the Plaintiff.  As such, summary judgment will be denied and this matter will proceed to trial on Plaintiff's retaliation claim brought under Section 1981.

B.  *Claims of Disability Discrimination under the ADA and PHRA*

Plaintiff contends that The Carnegie discriminated against him when it "stripped him of his duties after his open-heart surgery."

To establish a *prima facie* case of disability discrimination under the ADA, Plaintiff must establish that he:  (1) has a disability; (2) is a qualified individual; and (3) was subject to some adverse action because of that disability.  *Burskirk v. Apollo Metals*, 307 F.3d 160 (3d Cir. 2002).[2]  Defendant argues that Plaintiff is unable to establish a *prima facie* case of disability discrimination and, therefore, it is entitled to summary judgment.

Plaintiff responds that, upon his return from surgery, Defendant had a "perception of the limitations on Pollice's capabilities" and thus, "regarded" him as being disabled.

The ADA defines "disability" as a "physical or mental impairment that substantially limits one or more of the major life activities of [the] individual." *42 U.S.C. § 12102(2)(A)*. Under the interpretive regulations promulgated by the Equal Employment Opportunity Commission ("EEOC"), working is considered a major life activity.  *29 C.F.R. § 1630.2(i)*. With respect to working, "substantially limited" means that one is "significantly restricted in the

---

[2]  Pennsylvania courts generally interpret the PHRA in accordance with its federal counterparts.  *See Kelly v. Drexel Univ.*, 94 F.3d 102, 104 (3d Cir. 1996). Therefore, the disposition of Plaintiff's ADA claim applies with equal force to his PHRA disability claim.

11

ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *29 C.F.R. § 1630.2(j)(3)(i)*. "[T]he mere 'inability to perform a single, particular job' will not suffice to establish a substantial limitation with respect to working. *Marinelli v. City of Erie, Pa.*, 216 F.3d 353, 364 (3d Cir. 2000) (quoting 29 C.F.R. § 1630.2(j)). Both the EEOC and the courts have required a plaintiff to show that his or her impairment prevents that person from engaging in a category of jobs. *Id*.

In "regarded as" cases, the employer must perceive the individual as having an actual disability under the ADA. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999). The Court of Appeals for the Third Circuit has held that "an employer's perception that an employee cannot perform a wide range of jobs suffices to make out a 'regarded as' claim." *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 188 (3d Cir. 1999).[3]

Plaintiff underwent heart surgery in November 2001 and was absent from work temporarily until February 2002. When he returned to work, he was able to work full time without restrictions, and did not require any accommodations. The "mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate . . . that the employer

---

[3] As person is "regarded as" having a disability he or she:
"(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation;
(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
(3) Has [no such impairment] but is treated by a covered entity as having a substantially limiting impairment."
29 C.F.R. § 1630.2(l).

regarded the employee as disabled or that that perception caused the adverse employment action." *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996).

The only evidence relied upon by Plaintiff in support of his "regarded as" disabled claim is the deposition testimony of Randy Walker who testified that prior to Plaintiff's return to work, Armstrong met with the custodial staff and told them that Plaintiff's exclusive duties would be with respect to the custodial department. According to Walker, Armstrong said that Plaintiff "was coming back from his surgery [and] that [Armstrong] would just start him out slowly, [and] he wouldn't put too much responsibility on him. . . ." *Pl's App. 12, Walker Depo. at 28.*

The Court finds that this evidence alone is not sufficient to establish that Defendant perceived that Plaintiff was substantially limited in performing any major life activity and/or was not able to perform a wide range of jobs. Accordingly, the Court will grant the summary judgment motion filed by Defendant on Plaintiff's disability claims under the ADA and PHRA.

C.  *Breach of Contract Claims*

Plaintiff also alleges that The Carnegie breached an express or implied contract when it terminated his employment. *Complaint at ¶ 19.*

Pennsylvania is an at-will employment state. Absent an employment contract, the rule has historically been that an employer may terminate an employee for any reason. *Henry v. Pittsburg & Lake Erie Railroad Company*, 21 A. 157 (1891). [4] "[B]ecause the at-will doctrine

---

[4]     However, there is an exception to the at-will employment rule whereby, under limited circumstances, it is illegal to terminate an employee if the termination
(continued...)

13

is a presumption, the burden of proving that one is not employed at-will rests squarely upon the employee." *Rutherford v. Presbyterian-Univ. Hosp.*, 612 A.2d 500, 503 (Pa. Super. 1992).

Plaintiff has admitted that he did not have an express contract of employment with Defendant. *See Statement of Facts, ¶ 85.*

"In cases involving implied contracts of employment, the litigant will be able to reach the jury only if he can show clearly that he and the employer intended to form a contract." *Luteran v. Loral Fairchild Corp.,* 688 A.2d 211, 214 (Pa. Super. Ct. 1997). Plaintiff's assumptions that he would be employed for a "long time" - "at least seventeen years," and "retire from The Carnegie" do not create an implied contract of employment. *See Booth v. McDonnell Douglas Truck Servs., Inc.*, 585 A.2d 24, 27 (Pa. Super. 1991) ("It is clear that the legal presumption that employment is at-will can be rebutted only by clear evidence that the parties intended a definite term of employment."); *Ross v. Montour R.R. Co.*, 516 A.2d 29, 32 (Pa. Super. 1986) ("an employee's reliance on the bare supposition that his position was expected to last until retirement was too vague and indefinite to establish a specific term of employment.")

The Court finds and rules that Plaintiff's beliefs that his employment would be "long term" and that he would "retire from The Carnegie" do not establish a definite term of employment. Accordingly, the Court will grant the summary judgment motion filed by Defendant on Plaintiff's breach of contract claims.

---

[4](...continued)
constitutes a violation of a "clear mandate of public policy." *Geary v. United States Steel Corporation*, 319 A.2d 174, 180 (Pa. 1974).

D.    *Claims for Misrepresentation*

    1.    Negligent Misrepresentation

To succeed on a claim for negligent misrepresentation, a plaintiff must show the following: (i) there was a misrepresentation of a material fact; (ii) the representor either knew of the misrepresentation, made the representation without knowledge as to its truth or falsity, or made the representation under circumstances in which he ought to have known of its falsity; (iii) the representator intended the representation to induce another to act on it; and (iv) injury resulted to the party acting in justifiable reliance on the misrepresentation. *Gibbs v. Ernst,* 647 A.2d 882, 890 (Pa. 1994).

Plaintiff relies on the general terms allegedly used by O'Horo and Armstrong when they discussed with Plaintiff his prospective employment with The Carnegie, *i.e.*, "long term," in a "better environment" where he would have "broad authority." However, Plaintiff has produced no evidence to suggest that these statements were false when made, or were made under circumstances in which either O'Horo and/or Armstrong ought to have known of their falsity. Accordingly, the Court will grant the summary judgment motion filed by Defendant on Plaintiff's negligent misrepresentation claim.

    2.    Fraudulent Misrepresentation

The elements of fraud are: (i) material misrepresentation of fact; (ii) which is false; (iii) made with knowledge of its falsity; (iv) which is intended to induce the receiver to act; (v) upon which the receiver justifiably relies; and (vi) which results in injury proximately caused by the reliance. *Skurnowicz v. Lucci*, 798 A.3d 788, 793 (Pa. Super. Ct. 2002). To succeed on a

claim of fraud, the plaintiff must show that the defendant had a clear intent to deceive.  *Lind v. Jones, Lang Lasalle Americas, Inc.,* 135 F. Supp. 2d 616, 620 (E.D. Pa. 2001) ("Fraud consists of anything calculated to deceive . . .")

Plaintiff contends that the same generalized comments, as discussed *supra,* constitute fraud.  However, Plaintiff has produced no evidence which would indicate that Defendant intended to deceive him in any way.  Further, there is no record evidence to suggest that, at the time the alleged statements were made, Defendant did not intend to permit Plaintiff to experience long term employment in a better environment.  *See, e.g., Mellon Bank Corp. v. First Union Real Estate Equity and Mtg. Investments*, 951 F.2d 1399, 1411 (3d Cir. 1991) ("Statements of intention made at the time of contracting are not fraudulent simply because of a later change of mind.")

Accordingly, the Court will grant the summary judgment motion filed by Defendant on Plaintiff's fraudulent misrepresentation claim.

## CONCLUSION

For the reasons hereinabove set forth, the Court finds that a reasonable factfinder could certainly conclude that Plaintiff was terminated for legitimate, non-retaliatory reasons.  However, drawing any inference in the light most favorable to Plaintiff, the non-moving party, as the Court must do at this stage, the Court concludes that such a factfinder could conclude that the Defendant's stated reasons were pretextual and that Plaintiff was terminated in retaliation for his complaints regarding race discrimination.

On the other hand, however, the Court finds that Plaintiff has not produced evidence that Defendant intentionally discriminated against him because of his alleged disability or that Defendant breached any contract (either express or implied) when it terminated his employment.

Likewise, the Court finds that Plaintiff has not produced evidence that Defendant made negligent and/or fraudulent misrepresentations to him when O'Horo and Armstrong discussed Plaintiff's prospective employment with The Carnegie.

An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GUY POLLICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 04cv1424 |
| | ) | |
| CARNEGIE MUSEUMS OF PITTSBURGH, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER OF COURT

AND NOW, this 11th day of September, 2006, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

1.  The Motion for Summary Judgment filed by Defendant is **DENIED** as to the claim of alleged retaliation in violation of Section 1981;

2.  The Motion for Summary Judgment filed by Defendants is **GRANTED** as to all claims of alleged discrimination in violation of the ADA and PHRA; and

3.  The Motion for Summary Judgment filed by Defendants is **GRANTED** as to the Pennsylvania state law claims for breach of contract, and negligent and fraudulent misrepresentations.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc: Timothy P. O'Brien, Esquire
Email: tpob@icubed.com

Joseph P. Milcoff, Esquire
Reed Smith
Email: jmilcoff@reedsmith.com

Martha Hartle Munsch, Esquire
Reed Smith
Email: mmunsch@reedsmith.com